851 F.2d 1500
 271 U.S.App.D.C. 273
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
CARPENITO BROS., INC., a/t/a 5 C's Fruit & Produce, Petitioner,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE.
 No. 87-1190.
 United States Court of Appeals, District of Columbia Circuit.
 April 19, 1988.
 
 Before WILLIAMS and D.H. GINSBURG, Circuit Judges, and BOGGS*, Circuit Judge of the United States Court of Appeals for the Sixth Circuit.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was reviewed on the record on petition for review from the United States Department of Agriculture and was briefed and argued by counsel for petitioner and respondent. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.Rule 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the order of the United States Department of Agriculture, the review of which is sought in this cause, is hereby affirmed. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Petitioner seeks reversal of an order by the United States Department of Agriculture ("USDA") revoking his license under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. Sec. 499a et seq. (1982) ("PACA"). Although petitioner raises a number of claims, the only one that requires discussion is petitioner's argument that he was denied due process by the USDA Judicial Officer's decision to consider on appeal certain evidence that had been excluded by the Administrative Law Judge. Because we find that petitioner had ample opportunity to rebut the evidence at issue, we reject its due process claim.
 
 
 5
 Carpenito Bros., Inc. is a wholesale dealer in the interstate fruit and vegetable market, a business requiring a license under PACA. Carpenito, which has operated 5 C's Fruit & Produce for approximately thirty years in the Boston, Massachusetts area, has held a PACA license since 1966. On June 11, 1985, USDA filed a disciplinary complaint seeking to revoke Carpenito's license for failure to make full payment promptly to 22 suppliers in connection with 522 fruit and vegetable transactions. Carpenito denied that it had violated the Act and requested a hearing on the matter. An oral hearing was held before the ALJ on October 17, 1985.
 
 
 6
 The ALJ found that "the acts of [Carpenito] in failing to make full payment promptly in accordance with its credit arrangements with its suppliers ... constitute willful, flagrant and repeated violations of section 2 of the PACA (7 U.S.C. 499(b)." Petitioner's Appendix ("P.A.") at 38. Though the agency sought revocation, the ALJ issued an order suspending Carpenito's license, but holding the suspension in abeyance for one year so long as there were no future failures to pay promptly.
 
 
 7
 In connection with its request for revocation, USDA sought to introduce before the ALJ about 200 invoices and a four-page table concerning numerous fruit and vegetable transactions entered into by Carpenito after the filing of the complaint. The agency had obtained the documents directly from Edward Carpenito, Carpenito's buyer, two days before the hearing. The evidence showed that with respect to 143 transactions that occurred during the period from April through October 1985, Carpenito had not paid the vendors in full as of October 15, 1985.
 
 
 8
 Carpenito objected to the admission of the documents on the ground that the alleged violations had not been specified in the complaint. Id. at 99-104. In refusing to admit the evidence, the ALJ stressed that Carpenito had no notice it would be required to defend against such transactions. Id. at 42-43. She also expressed doubts about the probative value of the evidence. Id. at 43.
 
 
 9
 USDA appealed the ALJ's sanction decision, contending that the evidence relating to Carpenito's 1985 transactions was improperly excluded and that revocation, as opposed to suspension, was the appropriate remedy. The Judicial Officer agreed, holding that the evidence should have been admitted since it was relevant to the sanction decision and the complaint was sufficient to put Carpenito on notice that the agency would attempt to prove violations that occurred after the filing of that complaint. Id. at 71-72. In the absence of the proffer of any contrary information by Carpenito and in view of the fact that there did not seem any material dispute of fact concerning the evidence, the Judicial Officer held that it was appropriate for him to consider the evidence without remanding the matter for a further hearing.
 
 
 10
 The Judicial Officer concluded that in view of Carpenito's continued failure to make full payment promptly, the appropriate sanction for its willful, flagrant and repeated violations during 1983 and 1984 was revocation of its PACA license. Moreover, the Judicial Officer held that even
 
 
 11
 if a reviewing court should disagree, it would not aid respondent. If complainant's methodology here, approved by the Judicial Officer, were to be held unlawful, I would change the Department's sanction policy and not give respondents the opportunity to obtain a license suspension, rather than a license revocation, where there have been flagrant and repeated slow-payment violations such as those involved here. Id. at 71 n. 7 (emphasis in original). Accordingly, the Judicial Officer issued an order revoking Carpenito's PACA license. Carpenito then petitioned this court for review, seeking reversal of the Judicial Officer's decision to revoke its license and a remand to the agency for reinstatement of the ALJ's decision. (Carpenito did not appeal the agency's decision that it had committed willful, flagrant and repeated violations in 1983 and 1984 in violation of PACA.)
 
 
 12
 Id. at 71 n. 7. (emphasis in original). Accordingly, the Judicial Officer issu ed an order revoking Carpenito's PACA license. Carpenito then petitioned this court for review, seeking reversal of the Judicial Officer's decision to revoke its license and a remand to the agency for reinstatement of the ALJ's decision. (Carpenito did not appeal the agency's decision that it had committed willfu l, flagrant and repeated violations in 1983 and 1984 in violation of PACA.)
 
 
 13
 The major question on appeal is whether the Judicial Officer's decision to consider the documents concerning Carpenito's 1985 transactions, as opposed to remanding to the ALJ for further evidentiary hearings, violated due process. According to Carpenito, the Judicial Officer's application of 7 C.F.R. Sec. 1.141(g)(7) (1987)--which specifically allows such a course of conduct--unconstitutionally deprived it of an opportunity to review and rebut the documents at issue. We disagree.
 
 
 14
 Petitioners had several chances to raise any factual dispute concerning the evidence before both the ALJ and the Judicial Officer. Carpenito could have made an offer of proof before the ALJ, contingent upon the Judicial Officer's ultimate ruling on the admissibility of the evidence. True, the ALJ had issued an order stating that "the parties are to effectuate a mutual exchange of Exhibits, and lists of prospective witnesses on or before October 4, 1985." P.A. at 26. Notwithstanding this order, Carpenito was notified only two days before the administrative hearing on October 17, 1985 that the agency was going to offer evidence that Carpenito was continuing to violate PACA. (The agency had waited until then to collect the evidence.) But Carpenito suffered little prejudice from this short notice, as the documents were copies made from Carpenito's own records and thus Carpenito was presumably familiar with them. (It has never claimed lack of familiarity.) If Carpenito needed more time to prepare an offer of proof, it could have requested a continuance of the hearing. See 7 C.F.R. Sec. 1.143. Moreover, Carpenito could have identified in its post-hearing brief what evidence it would offer in response to the agency's proffer, but did not do so. Similarly, Carpenito could have pointed out any factual dispute concerning the 1985 transactions when it filed its opposition to the agency's appeal to the Judicial Officer. See 7 C.F.R. Sec. 1.145(b). Its opportunity to do so meant that it really had in excess of eight months in which it could have examined the material and found any errors. Finally, after the Judicial Officer entered his decision and order, Carpenito could have requested reconsideration by the Judicial Officer on the ground that there were material issues of fact that needed to be resolved. See 7 C.F.R. Sec. 1.146(a)(3). Yet once again Carpenito did not do so.
 
 
 15
 Carpenito has thus chosen to remain mum throughout this case, failing to identify any false or unreliable information contained in the agency's evidence. Indeed, even in its briefs and oral argument to this court, it has failed to pinpoint any evidence it would offer in rebuttal if a further evidentiary hearing were to be held, or points it would make to undermine the inferences USDA seeks to draw. Moreover, Carpenito admitted that the proffered evidence came from its own records. See P.A. at 101. Those records reveal the dates on which Carpenito obtained the produce in question. In many cases, the documents indicated when payment was due from Carpenito; where they didn't, payment would be due within ten days, unless prior to the transaction Carpenito and the vendor had executed a written agreement permitting Carpenito to pay later. See 7 C.F.R. Sec. 46.2(aa) (1985). Carpenito, however, admitted that there were no such written agreements in existence during the period in question. See P.A. at 130.
 
 
 16
 Accordingly, there appears to be no real factual dispute concerning the evidence: all payments for the produce purchased in each of the 143 transactions were due within ten days or as stated on the invoices. (The only exception would be if there were legitimate disputes concerning the particular produce transactions. See 7 C.F.R. Sec. 46.2(aa) (1985). But Carpenito has never claimed any such disputes existed.) Given Carpenito's failure to demonstrate a genuine issue of fact to be resolved at a hearing--despite his many opportunities to do so--we find that the Judicial Officer was fully justified in considering the information encompassed by the agency's offer of proof without remanding to the ALJ. As we only recently stated, a hearing is not necessary in the absence of any genuine dispute of material fact. Veg-Mix, Inc. v. U.S. Dept. of Agriculture, 832 F.2d 601, 607-08 (D.C.Cir.1987).
 
 
 17
 Although we uphold the Judicial Officer's sanction, we feel that a word on its severity is in order. We recognize that agencies have wide discretion in fashioning the appropriate punishment for a regulatory violation, see Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185-86 (1973). But it seems to us that revocation is an extremely harsh sanction in this case, albeit not so arbitrary as to justify judicial correction. In holding that revocation was unwarranted, the ALJ noted that petitioner had been in business over 25 years and had dealt with the same individuals about ninety percent of that time. Accordingly, the ALJ held that
 
 
 18
 [a] suspension period, which would be held in abeyance while [petitioner] was in full compliance with the Act, would be a severe sanction, would protect the interests of the industry as a whole, would ensure that the trust relationship which exists between members of the industry is maintained and would assure compliance with the provisions of the Perishable Agricultural Commodities Act.
 
 
 19
 P.A. at 47. We think there is much to be said for this holding. In their zeal to carry out their regulatory mission, agencies must not abandon their duty to ensure that the punishment fits the crime.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 For the foregoing reasons, the petition is denied.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 291(a)